[No. C047257. Third Dist. Nov. 23, 2004.]

GOLDEN GATE BRIDGE, HIGHWAY AND TRANSPORTATION
DISTRICT, Petitioner, v.
THE SUPERIOR COURT OF SAN JOAQUIN COUNTY, Respondent;
R&B PROTECTIVE COATINGS, INC., Real Party in Interest.

178

## COUNSEL

Caulfield, Davies & Donahue, Brian C. Haydon; Moye, O'Brien, O'Rourke, Pickert & Martin and Anthony R. Kovalcik for Petitioner.

No appearance for Respondent.

Mayall, Hurley, Knutsen, Smith & Green, Jeffrey B. Setness and Reina G. Minoya for Real Party in Interest.

## OPINION

**RAYE, Acting P. J.**—The Golden Gate Bridge, Highway and Transportation District (Golden Gate) seeks a peremptory writ of mandate compelling a change of venue pursuant to Code of Civil Procedure section 394, subdivision (a) (hereafter section 394(a)).[1] Upon consideration of the petition and preliminary opposition filed by real party in interest R&B Protective

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

Coatings, Inc. (R&B), we issued a *Palma* notice (*Palma v. U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 180 [203 Cal.Rptr. 626, 681 P.2d 893]), advising the parties that we were considering issuing a peremptory writ of mandate in the first instance and allowing a final opportunity to submit any opposition. R&B filed opposition and a request for judicial notice. We grant the request for judicial notice. We conclude that the issue presented is strictly a question of law and that a change of venue is mandatory. We therefore direct the issuance of a peremptory writ of mandate.

## BACKGROUND

The relevant background facts are not in dispute here. Golden Gate entered into a contract with Balfour Beatty Construction, Inc. (Balfour Beatty), for a seismic retrofit project. Balfour Beatty entered into a contract with R&B to provide paint coatings on steel to be incorporated into the project. Eventually, R&B filed a complaint against Balfour Beatty, asserting that it had not been fully paid pursuant to its contract. Balfour Beatty removed the matter to federal court on the basis of diversity jurisdiction.

In the federal court, Balfour Beatty filed counterclaims against R&B, asserting that R&B did not properly perform its work on the project. R&B filed a third party complaint against Golden Gate, asserting that any defects in the paint coatings applied by R&B were the result of Golden Gate's specifications. With the addition of Golden Gate to the lawsuit, diversity jurisdiction was lost and the federal court remanded the matter to the San Joaquin County Superior Court.

In the superior court, Golden Gate moved for a change of venue to a neutral county pursuant to section 394(a).[2] The trial court concluded that Golden Gate is a state agency rather than a local agency and denied the motion. Review by petition for a writ of mandate is the appropriate remedy for the denial of a motion to transfer a case to another county. (§ 400.)

## DISCUSSION

Section 394(a) provides, in relevant part: "Whenever an action or proceeding is brought against a county, city and county, city, or local agency, in any county, or city and county, other than the defendant, if the defendant is a county, or city and county, or, if the defendant is a city, or local agency, other than that in which the defendant is situated, the action or proceeding must be,

---

[2] Section 394(a) is applicable when a local agency is a cross-complainant or cross-defendant. (*Ohio Casualty Ins. Group v. Superior Court* (1994) 30 Cal.App.4th 444, 451 [35 Cal.Rptr.2d 771].)

on motion of that defendant, transferred for trial to a county, or city and county, other than that in which the plaintiff, or any of the plaintiffs, resides, or is doing business, or is situated, and other than the plaintiff county, or city and county, or county in which that plaintiff city or local agency is situated, and other than the defendant county, or city and county, or county in which the defendant city or local agency is situated . . . ."

Section 394, subdivision (b) provides: "For the purposes of this section, 'local agency' shall mean any governmental district, board, or agency, or any other local governmental body or corporation, but shall not include the State of California or any of its agencies, departments, commissions, or boards." Golden Gate argues that it is a local agency entitled to a transfer out of the county in which R&B is situated and does business. R&B, predictably, contends Golden Gate is a state agency that is excluded from the statute.

Contrary to R&B's assertion, Golden Gate was not created by the state Legislature. In 1923 the Legislature enacted legislation that allowed, but did not require, local governments, alone or in conjunction with other local governments, to form bridge and highway districts. (Stats. 1923, ch. 228, pp. 452–464, amended by Stats. 1925, ch. 387, pp. 714–722.) Pursuant to the enabling legislation, six counties (Sonoma, Mendocino, Marin, Napa, Del Norte, and the City and County of San Francisco) passed a uniform ordinance stating a desire to form Golden Gate as a multicounty district. (*Wheatley v. Superior Court* (1929) 207 Cal. 722, 724 [279 P. 989] (*Wheatley*).)[3] Petitions were circulated and signed by a sufficient number of qualified electors in each of the counties. (*Id.*, at p. 724.) In *Wheatley*, the Supreme Court rejected challenges to the formation of the district. In doing so, it found the district to be a public and quasi-municipal corporation similar to a municipal water district, a public utility district, a municipal utility district, and a metropolitan water district. (*Id.* at p. 726.)

Golden Gate is a district of limited geographical extent. It consists of the six counties that participated in its formation. (See *Doyle v. Jordan* (1926) 200 Cal. 170, 184–185 [252 P. 577]; Sts. & Hy. Code, §§ 27021–27022, 27510; Stats. 1923, ch. 228, § 2, pp. 452–453.) Although the Golden Gate Bridge is part of the state highway system and in that sense serves a state purpose, that is not sufficient to preclude application of section 394(a). (See *Marin Community College Dist. v. Superior Court* (1977) 72 Cal.App.3d 719, 722 [140 Cal.Rptr. 310].)

Golden Gate is not operated or managed by the state or by state employees. It is governed by a board of directors consisting of one director each from the

---

[3] The counties of Humboldt and Lake were asked but refused to join in the formation of the district. (*Wheatley, supra,* 207 Cal. at pp. 723–724.)

counties of Del Norte, Mendocino, and Napa; four directors from the county of Marin; three directors from the county of Sonoma; and nine directors from the City and County of San Francisco. (Sts. & Hy. Code, § 27510.) Most of the directors are appointed by the boards of supervisors of their respective counties. (*Ibid.*) One director from Marin is designated by the Marin Council of Mayors and Councilmen, one director from Sonoma is designated by the Mayors' and Councilmen's Association of Sonoma County, and one director from San Francisco is appointed by the mayor. (*Ibid.*)

■ In view of the manner in which Golden Gate was formed and its limited geographical extent, and in light of its management and governance, there is no basis upon which we could conclude that it is a state rather than local agency for purposes of section 394. (See *Anderson v. Superior Court* (1983) 142 Cal.App.3d 112, 115 [190 Cal.Rptr. 646] [flood control and water conservation district]; *H.K.H. Co. v. Superior Court* (1979) 95 Cal.App.3d 39, 41 [156 Cal.Rptr. 827] [housing authority]; *Central Contra Costa Sanitary Dist. v. Superior Court* (1978) 84 Cal.App.3d 702, 705 [148 Cal.Rptr. 801] (*Contra Costa*).)

In *Westinghouse Electric Corp. v. Superior Court* (1976) 17 Cal.3d 259, 266–267 [131 Cal.Rptr. 231, 551 P.2d 847], the Supreme Court held Code of Civil Procedure section 394 applicable to litigation involving the San Francisco Bay Area Rapid Transit District (BART). BART, like Golden Gate, is a multicounty district, and that did not deter the court from ordering a transfer of the action. Moreover, unlike Golden Gate, BART was created directly by the Legislature. (Pub. Util. Code, § 28600.) That did not persuade the court to consider BART to be a state agency for purposes of the statute. (See also *Garrett v. Superior Court* (1974) 11 Cal.3d 245, 247–248 [113 Cal.Rptr. 152, 520 P.2d 968] (*Garrett*).)

■ R&B asserts there is a presumption that the county in which an action is brought is the proper county for trial of the action. (*Mission Imports, Inc. v. Superior Court* (1982) 31 Cal.3d 921, 929 [184 Cal.Rptr. 296, 647 P.2d 1075]; *Buran Equipment Co. v. Superior Court* (1987) 190 Cal.App.3d 1662, 1666 [236 Cal.Rptr. 171].) However, where, as here, a plaintiff brings an action against a local agency in the county in which the plaintiff is situated and does business, then section 394(a) establishes a mandatory right to transfer to a neutral county. Where it is applicable, that section takes precedence over general venue provisions. (*Contra Costa, supra*, 84 Cal.App.3d at p. 705.) Whether a defendant is a local agency entitled to transfer is a question of law. (See *Crocker National Bank v. City and County of San Francisco* (1989) 49 Cal.3d 881, 888 [264 Cal.Rptr. 139, 782 P.2d 278]; *Sutco Construction Co. v. Modesto High School Dist.* (1989) 208

Cal.App.3d 1220, 1228 [256 Cal.Rptr. 671].) Once it is determined that the defendant is a local public agency, then no presumption can defeat the right of transfer.

■ R&B contends the trial court's denial of the motion to transfer the case should be upheld because it was not arbitrary. We apply an arbitrariness standard of review when there is discretion vested in the trial court. (See *City of Sacramento v. Drew* (1989) 207 Cal.App.3d 1287, 1297 [255 Cal.Rptr. 704].) ■ The transfer provisions of section 394(a) are mandatory. When it appears the defendant is a local agency being sued in the home county of the plaintiff, it is entitled to transfer as a matter of right.

R&B asserts that Golden Gate has been held to be a state agency in prior litigation. R&B refers to two proceedings in federal court. The first proceeding involved the question whether an attorney employed by Golden Gate was immune from federal income taxation under then existing tax laws that exempted from taxation compensation paid by a state or political subdivision to employees performing essential governmental functions. (See *Helvering v. Powers* (1934) 293 U.S. 214, 224 [79 L.Ed. 291, 294, 55 S.Ct. 171.) The United States Board of Tax Appeals and the Ninth Circuit Court of Appeals upheld the claim of exemption. (*Commissioner of Internal Revenue v. Harlan* (9th Cir. 1935) 80 F.2d 660, 661; *Harlan v. Commissioner of Internal Revenue* (1934) 30 B.T.A. 804.)

The second proceeding relied upon by R&B involved charging tolls against federal employees. Since there were military reservations on either side of the Golden Gate, the construction of the bridge required that rights-of-way and permission be obtained from the Secretary of War. As a condition of approval, the Secretary of War required an agreement exempting federal employees from tolls. By joint resolution, the state Legislature accepted the condition (Stats. 1931, ch. 35, pp. 2815–2816), as did Golden Gate's board of directors. Golden Gate subsequently attempted to charge tolls to federal employees and defended its action by asserting, among other things, that it is an independent corporate body that cannot have its property taken by consent of the state Legislature. The federal district court rejected the argument, concluding that Golden Gate is a governmental agency subject to the acts of the Legislature. (*U.S. v. Golden Gate Bridge and Highway Dist.* (N.D.Cal. 1941) 37 F.Supp. 505, 510.)

■ Both of the proceedings noted by R&B involved the issue whether Golden Gate is a governmental agency, as it certainly is. Neither case turned on a distinction between a state agency and a local agency. Neither proceeding involved an issue of venue. "Labeling an entity as a 'state agency' in one context does not compel treatment of that entity as a 'state agency' in all

contexts." (*Lynch v. San Francisco Housing Authority* (1997) 55 Cal.App.4th 527, 534 [65 Cal.Rptr.2d 620].) The Supreme Court has noted that in considering issues under section 394(a), "[p]revious judicial references to 'state agencies' in other contexts are not helpful." (*Garrett, supra,* 11 Cal.3d at p. 248, fn. 3.) We find no binding, or even convincing, precedent in the authorities cited by R&B.

■ R&B asserts that Golden Gate should be precluded from denying it is a state agency because Golden Gate has argued that it is a state agency in recent litigation. In *Michaeledes v. Golden Gate Bridge, Highway* (N.D.Cal. 2002) 202 F.Supp.2d 1109 (*Michaeledes*), Golden Gate argued it is a public entity that cannot be held liable in tort except to the extent permitted by the California Tort Claims Act. (Gov. Code, § 810 et seq.) The Tort Claims Act applies to all public entities in California, both state and local. (Gov. Code, § 811.2.) There is nothing inconsistent in arguing the applicability of the Tort Claims Act and section 394(a).

Moreover, in *Michaeledes*, the district court specifically noted that Golden Gate did not assert immunity pursuant to the Eleventh Amendment to the United States Constitution. (*Michaeledes, supra,* 202 F.Supp.2d at p. 1110.) That amendment bars suit against a state or an arm of the state in federal court and would have required Golden Gate to assert that it is a state agency. Golden Gate did not make that argument, relying instead on the California Tort Claims Act. Its position was not inconsistent with its current claim that it is a local agency.

In any event, the district court rejected Golden Gate's arguments concerning the Tort Claims Act and concluded that Golden Gate lacks the attributes of state sovereignty that would make it immune from a federal tort claim. (*Michaeledes, supra,* 202 F.Supp.2d at pp. 1112–1113.) Consequently, we cannot hold Golden Gate to be judicially estopped from changing its position to comport with a judicial ruling in an earlier case.

The other tort litigations in which Golden Gate is involved, of which R&B requests we take judicial notice, do not support R&B's position. In each of those litigations Golden Gate asserted it is a public entity within the meaning of the Tort Claims Act. We have noted that the Tort Claims Act applies to state and local public entities. (Gov. Code, § 811.2.) Golden Gate's assertion that the Tort Claims Act is applicable to it is not an assertion that it is a state rather than local agency.

■ For these reasons we conclude that Golden Gate is a local agency. Since this action was brought in San Joaquin County, in which R&B is situated and does business and in which Golden Gate is not situated, Golden Gate is entitled to transfer to a neutral county.

Let a peremptory writ of mandate issue directing the respondent superior court to vacate its order denying Golden Gate's motion to transfer the cause pursuant to section 394(a) and to enter a new order granting that motion. Golden Gate shall recover costs.

Robie, J., and Butz, J., concurred.